RENDERED: OCTOBER 31, 2019
TO BE PUBLISHED

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$



2018-SC-000588-DG

COMMONWEALTH OF KENTUCKY          APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.       CASE NOS. 2017-CA-000517-MR AND 2017-CA-000533-MR
PULASKI CIRCUIT COURT NOS. 16-CR-00002 AND 16-CR-00171

SHERRY GILMORE          APPELLEE

## OPINION OF THE COURT BY JUSTICE VANMETER

### REVERSING AND REMANDING

The Commonwealth of Kentucky appeals the Court of Appeals' decision reversing and remanding the trial court's order revoking Appellee Sherry Gilmore's probation and imposing her cumulative sentence of thirty years' imprisonment in accordance with her consolidated guilty pleas. We reverse the Court of Appeals' decision and find that the trial court complied with KRS[1] 439.3106 and our holding in *Commonwealth v. Andrews*, 448 S.W.3d 773 (Ky. 2014), in making sufficient oral and written findings supporting its decision to revoke Gilmore's probation.

---

[1] Kentucky Revised Statutes

## I.  Factual and Procedural Background.

In 2016, Gilmore pled guilty under two separate indictments.  Under the first indictment, she pled guilty to two counts of Trafficking in a Controlled Substance, First Degree, First Offense and was sentenced to ten years' imprisonment.  Under the second indictment, she pled guilty to two counts of Knowingly Exploiting an Adult, Resulting in a Total Loss to the Adult of more than $300 and was sentenced to serve twenty years' imprisonment.  The trial court ordered both sentences to be served consecutively, but suspended each sentence, placing Gilmore on strict five-year conditional supervised probation.

In October 2016, the Commonwealth filed for probation revocation based on affidavits submitted by Gilmore's Probation and Parole Officer, Michael Grigsby.  Off. Grigsby's affidavits indicated that Gilmore failed a drug screen on September 15, 2016, lied about using drugs, failed to comply with medical treatment, failed to cooperate with a parole officer, claimed to have several medical conditions during her presentence investigation without providing any documentation or proof of such ailments, and absconded from supervision. The Commonwealth filed a second motion to revoke prior to Gilmore's revocation hearing alleging that she had committed the offense of First-Degree Trafficking in a Controlled Substance while on probation.

In February 2017, the trial court held a probation revocation hearing. Off. Grigsby testified that Gilmore had initially tested positive for methamphetamine use.  Instead of seeking revocation, Off. Grigsby offered "both inpatient and outpatient treatment, [and] she declined both of these."

2

Following this discussion, Gilmore absconded from supervision. Gilmore testified that during this period she was being held against her will and forced to sell drugs and engaged in prostitution. After her testimony, the Commonwealth cross-examined Gilmore about a pending trafficking charge where she was recorded selling drugs while she absconded from probation.

Following Off. Grigsby and Gilmore's testimony the trial court made the following findings from the bench:

> Why aren't any of these other people here to lend any support whatsoever? I have only heard the most general assertions. It's impossible to confirm any of the information. . . .
>
> Not one piece of supporting evidence to support any of that. They are the most generalized types of assertions, which make it, frankly difficult for me to give any credence to your story. What I do know is you were using methamphetamine, we've got the lab confirmed positive test for that, and even you admit you were committing other offenses during this period of time.
>
> I am going to . . . revoke your probation and impose the sentence. . . . I have no difficulty at this point in concluding that you did violate all the terms and conditions [of your probation] as alleged by using methamphetamine, and by providing false information, failing to comply with treatment recommendations, failing to cooperate, and [], absconding. In addition, it appears that you have picked up a couple of additional charges we need to arraign you on. . . . I'll enter the order revoking, make factual findings consistent with the need for incarceration and that I cannot adequately supervise her within the community.

The subsequent written order revoking probation listed the charges and corresponding sentences Gilmore would serve. In addition, the order stated:

> The Court finds that the Defendant violated the terms of her probation for absconding probation supervision, use of a controlled substance, methamphetamine, providing false information to parole officer, failure to comply with any medical or mental health treatment, failure to cooperate with parole officer and failure to provide proof of medical conditions to the Pulaski County Jail or

3

Probation and Parole. Therefore, the Court orders that probable cause for revocation be found. The Commonwealth has convincingly established that the Defendant's failure to abide by conditions of supervision constitute a significant risk to prior victims or the community and cannot be successfully managed in the community.

Accordingly, the trial court sentenced Gilmore to a total of thirty years' imprisonment in accordance with her original plea.

On appeal, the Court of Appeals reversed and remanded the trial court's decision, holding that "the trial court's findings were not adequate" under KRS 439.3106, "[a]lthough we may agree that there is more than sufficient evidence in the record to support" Gilmore's probation revocation. Judge Smallwood dissented, asserting that the trial court's findings were enough to satisfy KRS 439.3106. We granted the Commonwealth's motion for discretionary review.

## II. Standard of Review.

The first step in analyzing a probation revocation claim is to determine whether the trial court properly considered KRS 439.3106(1) before revoking the defendant's probation. *Andrews*, 448 S.W.3d at 780. If the trial court considered the statute, we then review whether its decision to revoke probation was an abuse of discretion. *Id.* Accordingly, "we will disturb a ruling only upon finding that 'the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.'" *Id.* (quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

## III. Analysis.

KRS 439.3106(1) states:

(1) Supervised individuals shall be subject to:

4

(a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

The Commonwealth argues that the Court of Appeals misapplied our holding in *Andrews v. Commonwealth* in determining that the trial court's oral findings, and subsequent written order, did not satisfy the requirements of KRS 439.3106(1) prior to revoking Gilmore's probation. In *Andrews*, we held that "KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked." 448 S.W.3d at 780. We further held that "application of KRS 439.3106(1) allows the trial court to conclude with some certainty that the imposition of some other accountability measure would be fruitless, as the probationer both poses a risk and is not manageable in the community." *Id.* at 779–80.

Gilmore contends that the trial court's oral findings fail to address the proper statutory language and its written order merely recites KRS 439.3106(1)'s criteria as boilerplate with no further explanation. We acknowledge that "perfunctorily reciting the statutory language in KRS 439.3106 is not enough." *Helms v. Commonwealth*, 475 S.W.3d 637, 645 (Ky.

App. 2015). Rather, "[t]here must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met." *Id.*

These findings can be either oral or written to satisfy both KRS 439.3106(1) and the defendant's due process rights. *See Commonwealth v. Alleman*, 306 S.W.3d 484, 487 (Ky. 2010) (finding that a defendant's due process rights not violated by oral findings during revocation hearing); *see also Andrews*, 448 S.W.3d at 780 (holding trial court's "oral findings" were enough to satisfy KRS 439.3106). Although not explicitly discussed in either *Alleman* or *Andrews*, implicit in their holdings is the notion that we look to both the written and oral findings in conjunction with one another and not separately in a vacuum. Therefore, we must look at the trial court's findings—both in open court and in its written order—to determine whether KRS 439.3106(1) and due process requirements were met. The trial court made several specific findings from the bench regarding Gilmore's probation violations which were supported by the evidence: (1) that she tested positive for methamphetamine, (2) that she absconded from probation, (3) that she admitted to committing other crimes while absconding, (4) that she refused alternative treatment plans offered by her probation officer, (5) that she provided false information to her probation officer, (6) that she failed to cooperate with her probation officer, and (7) that she had picked up additional charges in the interim. Upon reciting this lengthy list, the trial court stated that it would "enter the order revoking, make

6

factual findings consistent with the need for incarceration, and that I cannot adequately supervise her within the community."

While not specifically reiterating the exact language of KRS 439.3106(1), the trial court's oral findings explain the reasons Gilmore's probation was revoked and emphasize that a "need for incarceration" exists and that the trial court "cannot adequately supervise her within the community." Further, the trial court explicitly stated that it would make the appropriate findings in its subsequent written order.

In its written order, the trial court spells out the required language under KRS 439.3106(1) by stating "[t]he Commonwealth has convincingly established that the Defendant's failure to abide by conditions of supervision constitute a significant risk to prior victims or the community and cannot be successfully managed in the community."[2] Gilmore argues that both the written and oral findings fail to meet the statutory criteria because any reference to the statute was "conclusory" and "without reference to any factual basis for support." This argument fails, as even though "[t]he statute requires a trial court to consider whether a probationer's failure to abide by a condition poses a significant risk to prior victims or the community at large[,] [n]either KRS 439.3106 nor *Andrews* require anything more than a finding to this effect supported by the evidence of record." *McClure v. Commonwealth,* 457 S.W.3d 728, 733 (Ky. App.

---

[2] In addition to the other reasons discussed at the revocation hearing, the trial court added that Gilmore "fail[ed] to provide proof of medical conditions to the Pulaski County Jail or Probation and Parole" in its written order.

7

2015) (internal quotations omitted). In conjunction with its remarks during the revocation hearing, the trial court's written order shows that the court considered all the evidence and the specific requirements of KRS 439.3106(1) before deciding to revoke Gilmore's probation. This decision was supported by the evidence of record and thus, no abuse of discretion occurred.

## IV. Conclusion.

We find that the trial court specifically considered KRS 439.3106(1) when it made oral and written findings revoking Gilmore's probation. Additionally, this finding was supported by the evidence of record. Thus, no abuse of discretion occurred, and we reverse the Court of Appeals' decision and remand for further proceedings.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General


COUNSEL FOR APPELLEE:

Steven Goens
Department of Public Advocacy